STATE of Maine

v.

Harry Anthony SAMPSON a/k/a Slim Goodie.

Supreme Judicial Court of Maine.

June 1, 1978.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Michael Messerschmidt, Law Student, Portland, for plaintiff.

Homer Michal (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On July 13, 1977, defendant Harry Anthony Sampson (a/k/a Slim Goodie) was indicted in the Superior Court (Cumberland County) for the offense of aggravated promotion of prostitution, in violation of 17–A M.R.S.A. §§ 851(2)(G), 852(1)(B). At a trial, jury waived, in September 1977, defendant was found guilty as charged.

He has appealed from the judgment of conviction entered against him. We deny the appeal.

The evidence would support findings of fact, as follows. On May 25, 1977, defendant went to a night club in Portland. There, he met a fourteen year old girl previously unknown to him. He asked her to join him for dinner the following evening. She gave a non-committal answer and did not keep the proposed date. A day or so thereafter defendant again saw the girl at the same club. He demanded $15 from her as a reimbursement for the cost of the meal which she had missed, and he further stated:

"[t]here's a $50 trick down the Westfield Inn, you only owe me $15." [1]

The girl, who had previously engaged in prostitution in Portland, answered that she would pay defendant some other time. When he insisted that she go with him at that time to the Westfield Inn, the girl finally assented. The two of them proceeded to the Westfield Inn where defendant arranged for them to enter a room. It turned out to be unoccupied. Defendant ordered the girl to take off her clothes and then told her that he was charging her $500.00,[2] adding the remark: "you can work on the corner and pay me the money." The girl said that she would "work the streets" and pay him $500. Defendant and the girl then engaged in sexual intercourse and spent the rest of the night in the same room. The next morning defendant told the girl to leave $150 for him that night in an envelope at the desk of the Plaza Hotel.

In her testimony the girl explained that she had said she would work the streets and pay defendant $500 of the proceeds because she was afraid of him.[3] She also testified that she had never intended to engage in prostitution for the benefit of the defendant.

1.

As his first point of appeal, defendant contends that the indictment upon which he was convicted is fatally deficient for failing to allege the nature of the prostitution "agreement", the elements of prostitution or the actual commission of any acts of prostitution.[4]

The indictment essentially followed the language of the statute. Under 17–A M.R.S.A. § 852(1)(B),

"[a] person is guilty of aggravated promotion of prostitution if he knowingly . . . [p]romotes prostitution of a person less than 18 years old."

Section 851(2)(G) defines "promotes prostitution" to mean, in one alternative, the

"[a]ccepting or receiving, or agreeing to accept or receive, a pecuniary benefit pursuant to an agreement or under-

---

1. As the girl explained at trial, a "trick" is a customer of a prostitute.

2. The girl testified that defendant was charging her $500 for having talked to him because he was a "pimp."

3. It is clear from the testimony that the girl was to pay the defendant with the proceeds that she would earn by engaging in prostitution.

4. The indictment charged:
"That on or about the twenty-sixth day of May, 1977, in the City of Portland, County of Cumberland and State of Maine, the above named defendant . . . did knowingly promote the prostitution of a person less than eighteen years of age, namely, M***** D*****, born August 16, 1962, in that he did agree to accept and receive a pecuniary benefit, namely, . . . [$150], pursuant to an agreement and understanding with said M***** D*****, she not being a patron, whereby he was to participate in the proceeds of prostitution."

standing with any person, other than with a patron, whereby he participates or he is to participate in the proceeds of prostitution."

Article I, Section 6, of the Maine Constitution gives an accused in a criminal prosecution the right to "demand the nature and cause of the accusation." In conformity to this constitutional guarantee we have held that an indictment which charges in the language of the statute is sufficient if it adequately provides a defendant of reasonable and normal intelligence with a clear identification of the crime and conduct charged. *State v. Child,* 158 Me. 242, 182 A.2d 675 (1962); *State v. Euart,* 149 Me. 26, 98 A.2d 556 (1953).

 Here, in addition to charging in the language of the statute and specifying the date and general location of the offense, the indictment alleged the name of the victim and the amount of the pecuniary benefit defendant was to receive. If defendant wanted further specification of the precise nature of the "agreement" in this case, he could have asked for a bill of particulars. *State v. Euart,* 149 Me. 26, 98 A.2d 556 (1953). Moreover, since "prostitution" is a word of common usage having a well understood meaning and the allegations in the indictment used the word with its ordinary meaning, the indictment adequately informed defendant of the "nature and cause of the accusation." *State v. Thibodeau,* Me., 353 A.2d 595 (1976).

██ It is of no legal consequence that the indictment failed to allege that any acts of prostitution had occurred. The offense here charged can be committed even though there have been no acts of prostitution since, under 17–A M.R.S.A. § 851(2)(G) a person "promotes prostitution" by

> "agreeing to accept . . . a pecuniary benefit pursuant to an agreement or understanding . . . whereby he participates or he *is to participate* in the proceeds of prostitution." (emphasis supplied)

The words "is to participate" make plain that the statute is violated by agreement to accept a pecuniary benefit from the proceeds of prostitution regardless of whether the agreement is actually performed.

### 2.

As another point of appeal, defendant says that since the presiding Justice found that the girl's act of "agreeing" was produced "by extortion" and that she had no intention to fulfill the agreement which she overtly stated, the presiding Justice applied an incorrect legal standard in concluding that the State had proved such "agreement or understanding" as is contemplated by 17–A M.R.S.A. § 851(2)(G).

 Defendant argues that in common usage the words "agreement and understanding" signify *voluntary* action and *genuine* intention by the parties. Whether or not defendant's assessment of common usage is correct, as legal concepts "agreement and understanding" arise by virtue of what is *objectively manifested* as agreement and understanding. Thus, if parties overtly state an agreement the law regards agreement as existing notwithstanding that one party may have been influenced by duress to agree and may entertain secret intention not to abide by the agreement.[5] Particularly in relation to the realities addressed by the crime here at issue, "agreement and understanding" should be given the same significance which the law generally attributes. Here, then, the correctness of the presiding Justice's conclusion that the "agreement and understanding" required by the statute had been established was not defeated by his further findings that "extortion" had produced the girl's agreement and she had no subjective intention to fulfill it.

### 3.

As another point of appeal, defendant claims that he was denied his right to confrontation under the 6th–14th Amendments to the Constitution of the United States as

---

5. Although in these circumstances an agreement has actually come into existence, in appropriate cases proceedings may be instituted to have it avoided or set aside.

interpreted in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

Defendant's contention concerns the following circumstances. The presiding Justice sustained an objection by the State to defense counsel's questioning of the State's principal witness as to whether she had been "in the Maine Youth Center" after the incident with the defendant at the Westfield Inn. Later, the Justice also sustained the State's objection to defense counsel's interrogating a Portland Police Officer in regard to whether juvenile proceedings had ever been initiated against the girl. In each instance defendant failed to make an offer of proof or to explain a limited purpose for his questions.

■ Under the Maine Rules of Evidence adjudications of juvenile delinquency, in contrast to various types of convictions of crime, are excluded as evidence by which the credibility of a witness may be generally impeached. See Rule 609 M.R.Evid. In *Davis v. Alaska,* supra, the Supreme Court of the United States decided that the right of confrontation guaranteed by the United States Constitution to the defendant in a criminal prosecution prohibits any *across-the-board* exclusion from evidence of adjudication of juvenile delinquency. In the circumstances of *Davis v. Alaska* the Court held that it was constitutionally requisite that the juvenile adjudication be admitted in evidence since the particular circumstances of the case had made the issue of *bias* most important and the fact of a juvenile adjudication had become highly relevant on the bias question.

■ Nothing decided in *Davis v. Alaska,* however, militates against the undertaking of the presiding Justice in the instant case to preserve this State's policy of protecting the anonymity of juveniles by preventing a *generalized and unrestricted inquiry* concerning whether the State's principal witness might have had a juvenile record. Defense counsel had not indicated that the questioning he proposed to conduct was for a particular or limited purpose, and no such limited purpose was plain from the context of the questions themselves, see

Rule 103(b) M.R.Evid. We conclude, therefore, that defendant did not adequately save for appellate cognizance in ordinary course the potential issue under *Davis v. Alaska* that he now purports to raise on appeal. Moreover, on the record before us we cannot say, in the context of a review for "obvious error", that the rulings of the presiding Justice here in question, even if assumed to be erroneous, had the effect of depriving defendant of a fair trial.

### 4.

Defendant also contends that he was denied the right to a fair and impartial trial by the presiding Justice's questioning of the State's principal witness. The series of 18 questions asked by the presiding Justice related primarily to the source of defendant's knowledge that the girl had been a prostitute and was known as a prostitute.

■ Under Rule 614(b) M.R.Evid., the court may interrogate any witness at trial. In a trial before a jury the presiding Justice must exercise this prerogative with caution so as not to suggest an opinion on factual issues arising in the case or to create a prejudicial impact on the jury. See, e. g., *State v. Annis,* Me., 341 A.2d 11 (1975); *State v. Chaplin,* Me., 308 A.2d 873 (1973). In a jury waived trial as here, however, there are no such dangers and therefore the policy considerations are different. The fundamental concern in a jury-waived trial is that the presiding Justice conduct himself as a fair and impartial fact-finder. Here, the questions asked by the presiding Justice of the State's principal witness, even if taken as having a tendency to impeach her credibility, were questions fairly relating to the responsibility of the Justice, as fact-finder, to evaluate credibility.

### 5.

■ Lastly, defendant claims that the Court committed "obvious error" by allowing defendant to implicate himself in another similar crime not charged in the indictment. Under 15 M.R.S.A. § 1315, an accused

"shall not be compelled to testify on cross-examination to facts that would convict, or furnish evidence to convict him of any other crime than that for which he is on trial."

After defendant admitted on cross-examination that he had another "lady" who was a "source of income", the prosecution asked whether the "lady" was turning over to defendant money that she earned at prostitution. When the defendant said: "Well, if it's not self-incrimination, you know,—" the presiding Justice stated: "he can answer if he wishes to." The prosecution then abandoned this line of questioning. Defendant failed to raise objection as to any of this questioning or the statements elicited.

Plainly, defendant was not "compelled" to testify in violation of his privilege against self-incrimination. In any event, defendant can take nothing under the manifest error-serious injustice context in which our appellate review is being sought. Surely, defendant could not be said to have been deprived of a fair trial since other evidence, properly admissible, had already established that defendant was a pimp for at least one other prostitute.

The entry is:

Appeal denied.

Judgment affirmed.