STATE of Maine

v.

Norman OUELLETTE.

Supreme Judicial Court of Maine.

Argued May 11, 1988.
Decided July 29, 1988.

David W. Crook, Dist. Atty., Alan P. Kelley (orally), Asst. Dist. Atty., Augusta, for State.

Peter B. Bickerman (orally), Sumner H. Lipman, Lipman & Katz, P.A., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

WATHEN, Justice.

Norman Ouellette appeals from convictions on multiple counts of gross sexual misconduct, unlawful sexual contact, and sexual abuse of a minor (17–A M.R.S.A. §§ 253–55 (Supp.1987)) after a jury trial in the Superior Court (Kennebec County). On appeal, Ouellette contends that the presiding justice made erroneous evidentiary rulings by permitting the State to inquire into an alleged act of sexual misconduct that was not included in the indictment and by prohibiting defendant from cross-examining the victim concerning certain matters related to her juvenile offense adjudication. Defendant also contends that the presiding justice erroneously defined the term "sexual act" in his instructions to the jury. Finally, defendant argues that the presiding justice committed reversible error by allowing the jury to separate prior to reaching a verdict without obtaining his consent pursuant to M.R.Crim.P. 24(e). Because we find no error with respect to the first three arguments and are evenly divided on the remaining contention concerning the separation of the jury, we affirm the judgments.

The presentation of evidence, including the testimony of the victim concerning the various incidents that resulted in the aforementioned charges, concluded on March 31, 1987. The case was submitted to the jury at 2:30 p.m. At 5:40 p.m., the presiding justice informed both Ouellette and the State that law enforcement authorities had reported that adverse weather conditions [1] had caused a flood watch to be posted for the Kennebec River Valley and that conditions would worsen as the evening progressed. Consequently, the presiding justice proposed to inquire whether the jurors were close to a verdict in order to determine whether to send them home and have them return to continue deliberations the following morning. Ouellette objected to this proposal and indicated that, if the presiding justice felt an emergency situation existed, then the jury could be sent home and a mistrial declared. The presiding justice ultimately determined that the severe weather conditions posed a possible threat to the safety of the jurors and thus, over Ouellette's objection, he elected to send them home and have them resume deliberations in the morning. Prior to excusing the jurors for the evening, the presiding justice cautioned them not to discuss the matter with anyone, nor were they to discuss the case among themselves until they officially reconvened the next day. Neither the State nor Ouellette requested that the presiding justice sequester the jury overnight. When the jury returned to deliberate the next day, neither side asked the presiding justice to poll the members of the panel to ensure that none of them had been exposed to any influence that could affect their ability to discharge their duties. Ouellette was ultimately convicted on two counts of gross sexual misconduct, two counts of un-

---

1. Much of the State suffered serious flooding to be equalled only once in 100 years. The Kennebec River flows by the courthouse and is plainly visible to those in the jury room. On the day in question, the river crested nearly thirty-six feet above its average height.

lawful sexual contact and one count of sexual abuse of a minor; he was acquitted on one count of rape.

We first address the contentions that the presiding justice erred one, in admitting certain testimony concerning sexual episodes between Ouellette and the victim that were not charged in the indictment and two, in prohibiting certain testimony concerning the victim's juvenile offense adjudication and probation thereon. The presiding justice has broad discretion in ruling on the admissibility of evidence challenged as unfairly prejudicial. Such a ruling will be overturned only upon a finding that the presiding justice abused his discretion. *State v. DeLong*, 505 A.2d 803, 806 (Me. 1986).

■ Concerning the first challenge, we have previously noted that:

M.R.Evid. 404(b) excludes evidence of a person's other wrongdoing, even when similar to the behavior alleged at trial, when that evidence is offered to prove that the person has acted in conformity with his wrongdoing on that other occasion. Such evidence may be admitted only if it is relevant to some other issue at trial.

*State v. Works*, 537 A.2d 221, 222 (Me. 1988). In this case, we find the presiding justice did not abuse his discretion in allowing the State to elicit testimony concerning sexual episodes between Ouellette and the victim that were not charged in the indictment in order to show the relationship between them. *See DeLong*, 505 A.2d at 805–06.

■ With respect to the second challenge, we acknowledge that even if prohibited by M.R.Evid. 609(d), a prior juvenile adjudication may be admissible to impeach the credibility of a witness if it demonstrates a strong tendency for bias. *Davis*

*v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In this case, however, the presiding justice did not abuse his discretion in prohibiting defendant from inquiring of the victim concerning her juvenile offense adjudication and probation thereon for the reason that the probative value of that evidence did not outweigh the State's interest in protecting the anonymity of juvenile offenders. *See State v. Sampson*, 387 A.2d 213, 217 (Me.1978).

■ Next, we consider Ouellette's contention concerning the jury instructions that included the current definition of "sexual act" rather than the definition applicable at the time of the offense. We find that, although the presiding justice failed to give the appropriate definition of sexual act, his charge did not change any essential element of the crime of gross sexual misconduct and therefore the substantial rights of defendant were not affected. *State v. Day*, 538 A.2d 1166, 1168–69 (Me. 1988).

■ On the remaining issue concerning the separation of the jury without defendant's consent, we are evenly divided as to which party bears the burden of demonstrating prejudice or the absence of prejudice. We therefore affirm by an evenly divided Court.

The entry is:

Judgments affirmed.

All concurring.