2006 ME 134

**STATE of Maine**

v.

**Brandon T. MILLS.**

Supreme Judicial Court of Maine.

Argued: Oct. 11, 2006.

Decided: Nov. 21, 2006.

---

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Lisa P. Marchese, Asst. Atty. Gen., Augusta, for State.

Merritt T. Heminway, Esq. (orally), Mittel Asen, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, LEVY, and SILVER, JJ.

**ALEXANDER, J.**

[¶ 1] Brandon T. Mills appeals from his conviction entered in Superior Court (Cumberland County, *Warren, J.*) for manslaughter (Class A), 17–A M.R.S. § 203(1)(A) (2005), and burglary (Class B), 17–A M.R.S. § 401(B)(4) (2005). Mills argues that the court abused its discretion and violated his Sixth Amendment right to confrontation by not allowing him to impeach a witness using her juvenile conviction and her Department of Health and Human Services (Department) records. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] The evidence presented at trial and the procedural history may be summarized as follows: On October 21, 2004, Antwane Mills was walking on Congress Street in Portland on his way to work. As he passed 223 Congress Street, someone from the building threw water at him. Antwane entered the building and confronted Herman Ramirez, a resident of the building. Antwane then left the building and returned to the apartment he shared with his brother, Brandon, and Brandon's girlfriend. Antwane told his brother about the incident.

[¶ 3] Brandon and Antwane returned to 223 Congress Street and sought entry into the Ramirez apartment. Isabel Garcia, Herman Ramirez's older sister, tried to shut the door before they entered, but Antwane and Brandon pushed their way inside. Herman and his older brother, Jarmaine Ramirez, joined their sister, Isabel, and a fight ensued in the doorway of the apartment. During the encounter, Herman saw Brandon produce a knife and stab Jarmaine. Isabel never saw a knife and did not see Brandon stab Jarmaine. The evidence indicated that Isabel was struggling with Antwane and was not involved in the altercation between Brandon and Jarmaine. After the stabbing, Brandon and Antwane fled from the scene. Jarmaine died from his wound.

[¶ 4] The Mills brothers traveled to Boston following the incident. After five days, they returned to Portland and surrendered to the police.

[¶ 5] Brandon Mills was charged with intentional and knowing murder, 17–A M.R.S. § 201(1)(A), and burglary, 17–A M.R.S. § 401(1)(B)(4).[1] Prior to trial, he filed several motions. One motion sought the admission of Isabel Garcia's March 14, 2001, juvenile conviction for carrying a concealed weapon, Class D, 25 M.R.S.A. § 2001 (Supp.2001),[2] and another sought the admission of Garcia's Department records, from August 1999 through February 2001, as they pertained to her possession of knives at that time.[3]

[¶ 6] Before and during the trial, the court discussed these motions with counsel. The court stated that it would allow the defense to ask Garcia if she carried a knife around the time of Jarmaine's death, but would sustain an objection to any question probing her possession of knives in the past.[4]

[¶ 7] After trial, the jury found Brandon Mills not guilty of murder, guilty of the lesser included offense of manslaughter (Class A), 17–A M.R.S. § 203(1)(A), and guilty of burglary (Class B), 17–A M.R.S. § 401(B)(4). The court sentenced Brandon Mills to seventeen years at the Department of Corrections, all but twelve years suspended, and six years of probation with conditions. This appeal followed.

## II. ANALYSIS

 [¶ 8] We review a trial court's evidentiary rulings for clear error or an abuse of discretion. *State v. Reese*, 2005 ME 87, ¶ 9, 877 A.2d 1090, 1092; *State v. Howe*, 2001 ME 181, ¶ 8, 788 A.2d 161, 163. We review determinations based on relevancy for clear error, but regularly review decisions on admissibility for abuse of discretion. *Howe*, 2001 ME 181, ¶ 8, 788 A.2d at 163. A trial court commits "clear error" on evidence questions when its findings regarding the foundation for admitting or excluding evidence are not supported by facts in the record. *Cf. D'Angelo v. McNutt*, 2005 ME 31, ¶ 6, 868 A.2d 239, 242; *see also Maine Appellate Practice* § 405(e) at 181 (2004). Discretion in rulings on evidentiary issues "is considered abused ... if the ruling arises from a failure to apply principles of law applicable to a situation resulting in prejudice." *State v. Bennett*, 658 A.2d 1058, 1062 (Me. 1995) (quoting *State v. Warren*, 312 A.2d 535, 544 (Me.1973)).

 [¶ 9] Pursuant to the Confrontation Clause of the Sixth Amendment, a defendant has a "right to conduct reasonable or otherwise appropriate cross-examination to expose facts from which jurors could appropriately draw inferences relating to a witness's reliability." *State v. Robinson*, 2002 ME 136, ¶ 13, 803 A.2d 452, 457 (quotation marks omitted). In criminal proceedings "the defendant's right to confront and cross-examine the witnesses against him significantly circum-

---

1. The State also charged Antwane Mills with murder, felony murder, and burglary. In exchange for Antwane's testimony at Brandon's trial, the State dropped the murder charge and Antwane pleaded guilty to Class D assault and Class B burglary.

2. Title 25 M.R.S.A. § 2001 (Supp.2001) has since been repealed and replaced by P.L. 2003, ch. 452 §§ N–1, N–2 (effective July 1, 2004) (codified at 25 M.R.S. § 2001–A (2005)).

3. Garcia's juvenile adjudication was a Class D offense and therefore closed to the public. *See* 15 M.R.S. § 3307(2) (2005). She was sixteen at the time of her juvenile adjudication and between fifteen and sixteen during the time period of the Department records. At the time of trial, she was twenty years old.

4. The court did allow evidence of one of Herman Ramirez's juvenile convictions for theft.

scribes the court's discretion to exclude the evidence." *State v. Donovan,* 1997 ME 181, ¶ 4, 698 A.2d 1045, 1047 (quoting *State v. Graves,* 638 A.2d 734, 737 (Me. 1994)). However, the Sixth Amendment does not give the defendant free reign to present testimony without the restraints imposed by the rules of evidence. *See Robinson,* 2002 ME 136, ¶ 15, 803 A.2d at 457–58. The extent and scope of impeachment evidence is left to the discretion of the court. *Bennett,* 658 A.2d at 1062.

## A. Admissibility of Garcia's Juvenile Adjudication

█ [¶ 10] Mills asserts that the trial court misapplied M.R. Evid. 609(d) to exclude Garcia's juvenile adjudication because she was a crucial witness for the State and he should have been allowed to explore the theory that she was an alternate suspect in the case. M.R. Evid. 609(d) states:

(d) Juvenile adjudications. Evidence of a juvenile adjudication in a proceeding open to the public may be admitted under this rule. Evidence of a juvenile adjudication in a proceeding from which the public was excluded may be admitted under this rule only in another juvenile proceeding from which the public is excluded.

A juvenile conviction that is not admissible pursuant to Rule 609(d) may remain admissible for impeachment purposes "if it demonstrates a strong tendency for bias." *State v. Ouellette,* 544 A.2d 761, 763 (Me. 1988); *see also Davis v. Alaska,* 415 U.S. 308, 317–19, 94 S.Ct. 1105, 39 L.Ed.2d 347

(1974); [5] *State v. Sampson,* 387 A.2d 213, 217 (Me.1978).

[¶ 11] Mills argues that our interpretation of *Davis* in *Ouellette* and *Sampson* is "subject to an unconstitutionally narrow reading" because we limited the *Davis* decision to situations where the defendant wanted to admit a juvenile adjudication to reveal the witness's possible bias. *See Ouellette,* 544 A.2d at 763; *Sampson,* 387 A.2d at 217. Mills fails to cite to anything in *Davis* that suggests our interpretation should be broader. In fact, *Davis* states:

We do not and need not challenge the State's interest . . . to preserve the anonymity of a juvenile offender . . . [p]etitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light . . . . In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender.

*Davis,* 415 U.S. at 319, 94 S.Ct. 1105.

[¶ 12] In this case, however, we need not reach Mills's constitutional challenge or rule on the scope of *Davis v. Alaska.* [6] Mills's challenge is based on the assumption that if he had been able to ask Garcia about her juvenile adjudication and her past experience with knives, Garcia would have lied. Then, because of the trial court's ruling, he would have been prevented from using the convictions and the

---

**5.** In *Davis v. Alaska,* the defendant appealed his convictions for burglary and grand larceny because he had been precluded from introducing evidence that the state's primary witness was on probation at the time of trial as a result of the juvenile court having adjudicated him delinquent for burglary. 415 U.S. 308, 311, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The defendant sought to introduce this adjudication to show that the witness may have been biased toward the prosecution based on his probationary status. *Id.*

**6.** The record is unclear as to what rule of evidence the trial court applied to exclude Garcia's juvenile adjudication.

Department records to impeach her. At trial, however, the defense was not allowed to ask Garcia if she had a habit of carrying knives *in the past* or if she was *ever* adjudicated delinquent for carrying a concealed weapon.[7] The trial court explained,

> I am not going to let you [use] Isabel's conviction on the existing record. You can say was it your habit at this time to carry a knife, were you carrying a knife on this day, but something she did four years earlier ... that's too far to go back and say have you carried a knife at any point in your life.

 [¶ 13] Therefore, the real issue in the present case is whether the trial court committed clear error or abused its discretion in precluding the defense from asking Garcia whether she had a history with knives four or more years in the past.

 [¶ 14] Admission of evidence supporting an inference that another person may have committed the crime for which the defendant is charged "is subject to a threshold ruling of relevance which is largely discretionary with the trial court." Field & Murray, *Maine Evidence,* § 401.3 at 92 (2000); *see also* M.R. Evid. 401–402.[8] Although a criminal defendant has the right to present evidence of an alternative suspect if the evidence raises a reasonable doubt as to the defendant's culpability, we will uphold the exclusion of evidence that is too speculative or conjectural. *Reese,* 2005 ME 87, ¶ 10, 877 A.2d at 1092–93.

"The defendant must reasonably establish the connection between the alternative perpetrator and the crime through *admissible evidence." Id.* (quoting *State v. Bridges,* 2003 ME 103, ¶ 39, 829 A.2d 247, 258) (emphasis in original); *see also State v. Robinson,* 628 A.2d 664, 667 (Me.1993).

[¶ 15] In the present case, Mills's argument that he should have been able to ask Garcia about her juvenile conviction to support his theory that she was an alternative suspect fails because this theory was wholly speculative. There was no evidence that Garcia had any recent experience with knives, and there was no evidence to suggest that Garcia could have been responsible for the stabbing of her brother. This line of questioning was not relevant pursuant to M.R. Evid. 401–402 and therefore the trial court did not err in excluding the evidence.

B. Garcia's Department Records

 [¶ 16] Mills also argues that the court abused its discretion in excluding Garcia's Department records as impermissible propensity evidence, pursuant to M.R. Evid. 404,[9] because he had a right to cross-examine her with respect to her familiarity with knives after she denied carrying a knife at the time of Jarmaine's death. However, there is no evidence in the record showing that Garcia lied about this fact. As the trial court properly concluded, the defense sought to use the De-

---

7. The court did allow the defense to impeach Garcia's credibility with a Department report revealing that she had made false accusations against one of her care providers.

8. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401. "All relevant evidence is admissible, except as limited by constitutional

requirements or as otherwise provided by statute or by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." M.R. Evid. 402.

9. M.R. Evid. 404(b) states:
 (b) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.

partment records to suggest that because Garcia had carried a knife four years in the past, she may have been carrying a knife at the time of Jarmaine's death. This is the type of evidence that M.R. Evid. 404(b) explicitly prohibits.

[¶ 17] As with the juvenile conviction, the real issue in the present case is whether the trial court committed clear error in precluding Mills from asking Garcia about her past possession of knives. For the reasons explained above, this line of questioning was not relevant because there was no evidence linking Garcia to the stabbing.

This evidence was properly excludable pursuant to M.R. Evid. 401–402. Mills has not demonstrated that the trial court committed error.

The entry is:

Judgment affirmed.