2005 ME 87

STATE of Maine

v.

Olland REESE.

Supreme Judicial Court of Maine.

Argued: April 26, 2005.
Decided: June 30, 2005.

G. Steven Rowe, Atty. Gen., Donald W. Macomber, Asst. Atty. Gen. (orally), Lisa P. Marchese, Asst. Atty. Gen., Augusta, for State.

Andrews B. Campbell (orally), Campbell Law Offices, P.C., Waldoboro, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, and LEVY, JJ.

DANA, J.

[¶ 1] Olland Reese appeals from a judgment of conviction for murder, 17–A M.R.S.A. § 201(1)(A) (1983),[1] entered in the Superior Court (Sagadahoc County, *Warren, J.*) following a jury trial. His sentence was forty-seven years. Reese contends, inter alia, that the court erred by excluding certain alternative suspect evidence. We disagree and affirm the trial court's judgment.[2]

## I. BACKGROUND

[¶ 2] On May 29, 2002, after Cody Green had not been seen or heard from for three days, her mother reported to the Brunswick Police that she was missing. The police opened an investigation and interviewed many witnesses including Reese; his girlfriend, Kara McGinnis; and Trudy Bither, Reese's mother. The police also interviewed Phil Wilkins, a taxicab driver, and learned that he had dropped Cody off at the house where Reese lived with his mother, on May 26. As far as the police could determine, this was the last time Cody was seen alive.

[¶ 3] Cody's body was found a month later buried in a shallow grave in the woods behind the Bither house. Reese was charged and tried for her murder. Based on the evidence admitted at trial, the jury could have found Reese guilty beyond a reasonable doubt based on the following circumstantial evidence. Reese was alone at the house around the time Cody was dropped off by Wilkins. The police discovered Cody's blood on a futon and on a wall in Bither's house, and her DNA was found on a hatchet. Based on the autopsy results, Cody was hit on the head once or twice with an object that could have been the hatchet. Cody's wrists were tied with duct tape, similar to duct tape found near the bloodstained futon in the house. A fiber on a sheet found wrapped around Cody's head was similar in composition to the fabric covering the same futon. The night before Cody disappeared, Reese and Kara slept on the sheet that was found wrapped around Cody's head. Reese knew certain information about the condition of Cody's body before that information was public. Finally, when questioned by the police about his whereabouts on the day Cody disappeared, and whether she had stopped by his house that day, Reese gave multiple, inconsistent accounts.

---

1. Title 17–A M.R.S.A. § 201(1)(A) has since been amended by P.L. 2001, ch. 383, § 8 (effective Jan. 31, 2003), (codified at 17–A M.R.S.A. § 201(1)(A) (Supp.2004)). At the time of Reese's conduct, it read: "A person is guilty of murder if ... [h]e intentionally or knowingly causes the death of another human being ...." 17–A M.R.S.A. § 201(1)(A) (1983).

2. Reese also argues that (1) the State violated his due process rights by both failing to compare certain latent prints with a print found on duct tape on the victim and denying him access to a material witness; (2) his right to a fair trial was violated by a reference to a polygraph test; (3) the searches were so tainted with procedural irregularities and omissions that his federal and state constitutional rights were violated; (4) there was insufficient evidence to support a verdict; and (5) in his consolidated sentence appeal, the court misapplied sentencing principles. We do not discuss these issues because, after considering them, we find them to be without merit.

[¶ 4] Prior to trial, the State moved to exclude alternative suspect evidence that it anticipated Reese would offer at trial. At a hearing on the motion, Reese offered Chris Brawn as a primary alternative suspect. Reese argued that because Brawn had been indicted for raping Cody, he had a motive to kill her, and, indeed, the indictment was dismissed after her death. Reese also offered Alicia Brewer, who would testify that Cody hid from Brawn when she saw him shopping the day before she disappeared. Reese argued that this shopping encounter provided Brawn with sufficient opportunity to follow and kill Cody. Additionally, Reese offered that Sierra Riel, Cody's stepsister, would testify that Brawn's girlfriend, Megan Cochran, said that she wanted to beat Cody to death. Reese argued that Cochran's threat not only makes her an alternative suspect, but also points to Brawn as an alternative suspect.

[¶ 5] Reese offered Tyler Swisher as a third alternative suspect. After Cody's disappearance, but prior to the discovery of her body, Swisher wrote a letter to his cousin at the Long Creek Youth Center. The cousin, who was Brawn's half brother, was present at the time Brawn allegedly raped Cody and was also a friend of Cody's. After receiving the letter, the cousin tore off and disposed of the portion of the letter that apparently addressed Cody's death. He then discussed the letter with two Youth Center officers, who subsequently filed reports about the conversations. According to the officers, the boy told them that the letter said that Cody was dead. Neither officer, however, saw the letter.

[¶ 6] Prior to trial, the police interviewed both the recipient of the letter and its author. Both denied any conclusive knowledge of Cody's death prior to the discovery of her body. The recipient stated that Swisher had merely assumed she might be dead. Swisher stated that he recalled writing that Cody might be dead because she was missing.

[¶ 7] At the hearing, the court provisionally excluded evidence relating to Swisher and the cousin on hearsay grounds. The court, however, reserved decision on the evidence relating to Brawn for trial. At trial, Reese renewed his motion to admit alternative suspect evidence concerning Brawn. The court stated that it wanted to limit the evidence to avoid a trial within a trial on the alternative suspect issue. The parties eventually agreed that if the Brawn indictment, its dismissal, and Brewer's testimony were admitted, further court papers regarding Brawn would not come in. Reese made it clear, however, that by agreeing to this, he was not waiving his right to offer other testimony supporting his alternative suspect theory.

[¶ 8] Ruling upon Reese's offer of additional alternative suspect evidence, the court excluded Reil's testimony about Cochran's threat as hearsay and reaffirmed its decision to exclude testimony concerning the Swisher letter. The court also excluded all further inquiry into Brawn's whereabouts on the weekend Cody disappeared on the basis that it was speculative. Reese did not make further offers of proof and did not attempt to present Cochran as a witness.

## II. DISCUSSION

■ [¶ 9] We review a trial court's decision to admit or exclude evidence for abuse of discretion or clear error. *State v. Bridges*, 2003 ME 103, ¶ 39, 829 A.2d 247, 258.

■ [¶ 10] A defendant is permitted to present evidence tending to establish that another is responsible for the crime for which he is charged, and the trial court must admit that evidence "if it is of sufficient probative value to raise a reasonable

doubt as to the defendant's culpability." *Id.* (quoting *State v. Dechaine,* 572 A.2d 130, 134 (Me.1990)). "The defendant must reasonably establish the connection between the alternative perpetrator and the crime through *admissible evidence.*" *Bridges,* 2003 ME 103, ¶ 39, 829 A.2d at 258 (emphasis in original). "Without such evidence a defendant cannot be allowed to use the trial to conduct an investigation that [the defendant] hopes will convert what amounts to speculation into a connection between the other person and the crime." *State v. Robinson,* 1999 ME 86, ¶ 20, 730 A.2d 684, 688–89 (quoting *Dechaine,* 572 A.2d at 134). "We have . . . upheld the exclusion of evidence that is 'too speculative or conjectural or too disconnected from the facts' of a defendant's prosecution." *State v. Robinson,* 628 A.2d 664, 667 (Me.1993) (quoting *State v. Conlogue,* 474 A.2d 167, 172 (Me.1984)).

## A.  Swisher Letter

■  [¶ 11] Reese argues on appeal that the contents of Swisher's letter should have been admitted as alternative suspect evidence because the content of the letter was a statement against Swisher's penal interest pursuant to M.R. Evid. 804(b)(3).[3] Reese never raised this hearsay exception at trial and therefore has failed to preserve it. *See State v. Irving,* 2003 ME 31, ¶ 8 n. 2, 818 A.2d 204, 207 (stating that when excluded evidence is not made part of the record and no further offer of proof is made, it is not preserved for review). Furthermore, the relevant portion of the letter does not exist, and Reese's offer of proof as to what the letter said was speculation on his part and inconsistent with what Swisher and the recipient would say.[4] Even if Reese had preserved this issue, there was no showing that Swisher was unavailable. *See* M.R. Evid. 804(a);[5] *see*

3.  M.R. Evid. 804(b)(3) provides:

*Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. A statement or confession offered against the accused in a criminal case, made by a defendant or other person implicating both the declarant and the accused, is not within this exception.

*Id.*

4.  The youth officers never saw the contents of the letter and both Swisher and the recipient would testify that they were only speculating that Cody was dead.

5.  M.R. Evid. 804(a) provides:

"Unavailability as a witness" includes situations in which the declarant:

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means.

A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

*also State v. Small,* 2003 ME 107, ¶ 25, 830 A.2d 423, 429 (stating that the first prong of the test determining the admissibility of evidence pursuant to M.R. Evid. 804 is that the declarant must be unavailable as a witness). Accordingly, the court properly excluded evidence relating to the content of the Swisher letter as inadmissible hearsay.

## B. Cochran's Threat

[¶ 12] Reese argues that Reil's report of Cochran's threat to kill Cody should have been admitted because it raises a reasonable doubt as to Reese's guilt by making Brawn a more plausible alternative suspect, and Cochran, a second alternative suspect.

[¶ 13] To the extent it made Brawn a more plausible suspect, Cochran's threat was prima facie admissible. Reese, however, offered only Reil's testimony about what Cochran said. Reil was not the declarant. *See* M.R. Evid. 801(b). Further, because the statement was offered to create reasonable doubt, it was offered for the truth of the matter asserted. *See* M.R. Evid 801(c). Accordingly, Cochran's threat was properly excluded as hearsay. *See* M.R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

[¶ 14] To the extent the statement implicated Cochran as an additional alternative suspect, Reese did not present any evidence establishing a reasonable connection between Cochran and the crime and the court properly excluded it. *See Bridges,* 2003 ME 103, ¶ 39, 829 A.2d at 258.

The entry is:

Judgment affirmed.