MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 10
Docket:       Sag-12-162
Argued:       October 26, 2012
Decided:      January 17, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## OLLAND REESE

SAUFLEY, C.J.

[¶1]  In 2003, a jury found Olland Reese guilty of intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2012), for killing a sixteen-year-old girl in May 2002.  The girl had been struck in the head with a blunt object and buried, with her wrists bound in duct tape, behind Reese's mother's home in Bowdoin.  We affirmed the court's (*Warren, J.*) judgment of conviction and forty-seven-year sentence entered after the jury returned its verdict.  *See State v. Reese*, 2005 ME 87, 877 A.2d 1090.  Five years after Reese's conviction, he moved for additional DNA analysis and for a new trial.  *See* 15 M.R.S. §§ 2136-2138 (2011).[1]  The newly available evidence upon which Reese sought a new trial included evidence that a trace amount of male DNA, which had previously been found in a clipping

---

[1]  Title 15 M.R.S. § 2138 was recently amended, though not in any way that is relevant to this appeal. *See* P.L. 2011, ch. 601, § 13 (effective Aug. 30, 2012) (codified at 15 M.R.S. § 2138(12) (2012)).

from the duct tape on which a latent palm print was discovered, had been further analyzed, and that Reese was excluded as the source of that DNA.

[¶2] Reese now appeals from the court's (*Warren, J.*) denial of his motion for a new trial. He argues that the court erred in reaching findings regarding the possible contamination of the clipping of duct tape that was tested and subjected to updated methods of DNA analysis. Reese contends that the court misapplied the relevant statute, 15 M.R.S. § 2138(10), in assessing how the new DNA evidence could affect the outcome of the trial.[2] We affirm the denial of Reese's motion for a new trial.

## I. BACKGROUND

[¶3] The facts supported by evidence presented at the original trial were described in *State v. Reese*, 2005 ME 87, 877 A.2d 1090, and we provide some further detail here. Olland Reese was living at his mother's house in Bowdoin during the Memorial Day weekend in 2002. *See id.* ¶ 2. In the summer of that year, Reese was charged by indictment with the murder of a sixteen-year-old girl who was last seen alive when she was dropped off at that house by a taxi. *See id.*

---

[2] In addition to his brief filed through counsel, Reese has also filed his own "supplemental brief" in which he asserts that the prosecutor knowingly introduced false testimony and withheld evidence in violation of due process. He bases his argument primarily on (1) a discrepancy in the testimony about who clipped the portion of the duct tape that was tested and (2) an assertion that the test result showing a trace amount of male DNA on the tested clipping was not shared with Reese before his 2003 trial. The record contains evidence, however, that the State's DNA analyst—not the latent print analyst—clipped the duct tape for DNA testing, and that the profile showing that a trace of male DNA could be present was given to Reese's DNA expert directly, at his attorneys' request, before his 2003 trial. We do not discuss Reese's separately briefed issues further.

¶¶ 2, 3. After Reese pleaded not guilty, a jury trial was held over the course of thirteen days in 2003.

[¶4] During that trial, the State offered voluminous evidence that implicated Reese in the murder. That evidence showed that, on May 26, 2002, the last day that the victim was seen alive, the victim was dropped off by taxi at Reese's mother's residence while Reese's mother was away for the weekend and Reese's girlfriend, who was the victim's close friend, was at work. Reese was at the house when the victim arrived.[3] When the girlfriend returned to the house, she noticed that Reese was agitated, that a hatchet that was normally kept indoors was outside on the porch, that the interior of the house had been cleaned, that a striped sheet that had been on the living-room futon was missing, and that Reese was anxious to leave the house as soon as she arrived.

[¶5] About one month later, the victim's body was discovered buried in the missing striped sheet about 125 yards behind Reese's mother's house. The victim's blood was soaked into the living-room futon, more of her blood was found on a wall in the hallway, and her DNA was present on swabs taken from the blunt end of the hatchet found in Reese's mother's house. When Reese was interviewed by law enforcement on multiple occasions after the victim's disappearance and

---

[3] Reese provided multiple conflicting statements to police about where he was and whether he saw the victim when the victim arrived at his mother's house by taxi. At trial, he testified that he was at the house and saw the taxi outside, but he denied having seen the victim.

4

later after the discovery of the body, he gave three different accounts of what had happened during the hours when his girlfriend was at work on May 26, 2002.

[¶6] Relevant to the matters before us today, the State presented evidence during the 2003 trial that a latent hand print had been discovered on the adhesive side of the duct tape that was wrapped around the victim's wrists. Examination revealed that the print did not match Reese's prints or any other known samples, including prints taken from the man Reese offered as the primary alternative suspect.[4] Because the victim's body had decomposed, the medical examiner was unable to take prints of the victim's hands for purposes of comparison.

[¶7] The jury also heard testimony at trial indicating that DNA testing revealed contamination of the duct tape clipping. The latent print analyst's DNA was found on that section of the duct tape. Although information regarding the possible presence of male DNA was included in the documents that the State shared with the defense expert, the jury did not receive any evidence suggesting that any amount of male DNA may also have been present in the sample clipped from the tape. The State argued in closing that the print on the duct tape was likely from the victim.

---

[4] Testimony was offered at trial to establish that this alternative suspect was, at the time the victim disappeared, facing charges that he had raped the victim.

[¶8]  After hearing the testimony and considering the physical, photographic, and documentary evidence, the jury found Reese guilty of murder.  *See Reese*, 2005 ME 87, ¶ 1, 877 A.2d 1090.  The resulting judgment was affirmed on appeal. *See id.*

[¶9]  In August 2008, Reese filed a postjudgment motion for DNA analysis and for a new trial pursuant to 15 M.R.S. §§ 2136-2138.  Because some testing had already been conducted by agreement, the court held an evidentiary hearing on October 10, 2008, at which two witnesses from the State Police Crime Lab testified.

[¶10]  First, the court heard testimony from the forensic scientist who had originally identified and analyzed the latent print on the duct tape.  She testified that she had discovered the print on the fifth layer of tape away from the victim's skin and that the print did not match Reese's prints or any known prints supplied by the State for comparison.  When she was analyzing the print in 2002 and 2003, the protocols called for DNA swabbing to occur before print analysis, though no swabbing of this evidence had been ordered or undertaken before the duct tape came to the latent print analyst.  Also when the print was analyzed, it was not customary for new, fresh brushes to be used for taking prints.  The brush used to dust this print had been used in other exams and could have transported cells to the sample.

[¶11]   The DNA analyst from the crime lab then testified that she received the tape from the latent print analyst after the print had already been discovered and analyzed.  The DNA analyst used sterile scissors to cut out the area containing the print and clip it into five pieces to fit it into a tube for testing.  When tested in 2002 or 2003, the sample contained insufficient DNA to produce a unique profile.  Only five of the thirteen loci needed to identify a profile were present.  Those five loci were adequate, however, to confirm that the sample was contaminated with the latent print analyst's DNA.  The chart showing the DNA profile, known as an electropherogram, also contained a small Y blip, which indicated that a trace amount of male DNA could be present.  These test results were shared with Reese's DNA expert before Reese's 2003 trial.  In 2008, that sample was subjected to additional testing using a newer Y-STR analysis, which isolates the male DNA profile from a mixed sample.  The DNA analyst testified that this analysis provided an additional four-loci profile that confirmed the presence of male DNA and excluded Reese as the source of the DNA.

[¶12]   The court also heard testimony on November 6, 2008, from Reese's two trial attorneys concerning the effect this new evidence could have had on trial strategy had it been available before trial.

[¶13]   Before the court entered its decision, Reese moved for additional DNA testing.  In July 2009, the court ordered testing of the duct tape clipping and

other identified items such as the victim's fingernails and swabs that were taken from the hatchet. In June 2011, the court ordered further swabbing and testing of the entire remaining strip of duct tape that had bound the victim's wrists. No new DNA evidence was discovered on the swabbed duct tape or on the other tested items.

[¶14] To receive evidence of the test results and accept final testimony regarding the motion for a new trial, the court held a hearing on October 21, 2011. At that hearing, the crime lab's DNA analyst testified about the test results, and a professor of biology, offered as a witness by Reese, testified to his opinion that the trace amount of male DNA on the duct tape was the DNA of the person who left the print on that tape.

[¶15] To summarize, the evidence available to Reese and the State and presented to the jury at the 2003 trial showed that (1) a partial print appeared on the adhesive side of the fifth layer of duct tape; (2) the print did not match Reese's prints or any known samples supplied for comparison, including the prints of the primary alternative suspect identified by Reese at trial; (3) no prints were available for comparison with the victim due to the decomposition of the body; and (4) the DNA testing of the section of tape on which the print appeared was contaminated with the latent print analyst's DNA. Further, although the evidence was not presented to the jury, both the State's expert and Reese's expert had reviewed the

electropherogram, which showed the small Y blip indicating that there could be a trace amount of male DNA in the sample.

[¶16] The post-conviction Y-STR testing resulted in the discovery of the following additional evidence: (1) there was, in fact, a trace amount of male DNA present in the clipping; (2) that DNA was *not* Reese's DNA because the four identified loci of the DNA excluded him as a contributor; and (3) no other male DNA was discovered in swabs taken from the rest of the duct tape. Neither Reese nor the State sought or undertook further comparison of the four-loci DNA profile against any alternative suspects, such as the primary alternative suspect identified in the 2003 trial.

[¶17] Based on the reports of test results, the testimony offered in connection with Reese's motion, and the voluminous trial evidence, the court denied the motion for a new trial. In analyzing the possibility of contamination, the court observed generally that, "[i]f the other evidence strongly implicates Olland Reese, the possibility that the YSTR profile resulted from contamination is increased," especially because the statute requires consideration of "all the other evidence in the case," 15 M.R.S. § 2138(10)(A), (B), (C)(1).

[¶18] The court determined that the evidentiary record made it impossible to know whether the DNA came from the person who wrapped the tape around the victim's wrists or from contamination of the tape before or after the commission of

the crime. The court found that there were multiple ways that the sample could have been contaminated, including by the latent print analyst's reuse of the fingerprint dusting brush in the lab. The court found that contamination could also have occurred because the smooth side of the fifth layer of tape had not been covered by another layer of tape, creating a potential that cells were deposited on the exterior of the tape that the DNA analyst eventually clipped. The photograph upon which the court relied for its finding shows that the smooth side of the tape was exposed. The court concluded that the motion for a new trial could not be granted pursuant to 15 M.R.S. § 2138(10)(A) or (B) because Reese had failed to produce "clear and convincing evidence" showing that "[o]nly the perpetrator of the crime or crimes for which the person was convicted could be the source of the evidence."

[¶19] Thus, the court went on to consider the final method for establishing a right to a new trial based on newly discovered DNA evidence, which authorizes a new trial if "[a]ll of the prerequisites for obtaining a new trial based on newly discovered evidence are met." *Id.* § 2138(10)(C). One of those prerequisites is that "[t]he DNA test results, when considered with all the other evidence in the case, old and new, admitted in the hearing conducted under this section on behalf of the person *would make it probable that a different verdict would result upon a new trial*." *Id.* § 2138(10)(C)(1) (emphasis added).

[¶20]  The court was not persuaded that the newly discovered DNA evidence made a different verdict probable, largely due to the strong evidence of Reese's guilt and the limited nature of the additional DNA test results.  The court cited the critical pieces of trial evidence that demonstrated that Reese had committed the crime.  The court also noted that the jury was aware that a partial print had been located on the duct tape that did not belong to Reese and that the DNA of the forensic scientist who analyzed the print had been discovered on the tape.  The court concluded that Reese had failed to demonstrate, by "clear and convincing evidence," *id.* § 2138(10), that the test results revealing a trace amount of male DNA that was not Reese's "would make it probable that a different verdict would result upon a new trial," *id.* § 2138(10)(C)(1).

[¶21]  Reese timely appealed.  *See id.* § 2138(11); M.R. App. P. 2.

## II.  DISCUSSION

A.    Standards for Granting a New Trial

[¶22]  We review a court's factual findings on a motion for a new trial for clear error.  *State v. Cookson*, 2003 ME 136, ¶ 28, 837 A.2d 101, *cert. denied*, 543 U.S. 852 (2004).  We review the court's interpretation of the post-conviction DNA analysis statute de novo.  *State v. Donovan*, 2004 ME 81, ¶ 12, 853 A.2d 772.  When a court has reached findings that are supported by the record and has interpreted and applied the statute properly, the court's ultimate decision whether

to grant a new trial is reviewed for an abuse of discretion. *See Cookson*, 2003 ME 136, ¶ 28, 837 A.2d 101.

[¶23] To obtain a new trial based on newly discovered DNA evidence obtained through a postjudgment motion for DNA analysis, a defendant must establish by clear and convincing evidence one of three statutorily identified reasons for the granting of a new trial. *See* 15 M.R.S. § 2138(10). Two of these grounds for granting a motion for a new trial require as a prerequisite a showing that *only* the perpetrator of the crime could be the source of the DNA evidence:

> If the results of the DNA testing under this section show that the person[5] is not the source of the evidence, the person authorized in section 2137 must show by clear and convincing evidence that:
>
> > **A.** *Only the perpetrator of the crime or crimes for which the person was convicted could be the source of the evidence*, and that the DNA test results, when considered with all the other evidence in the case, old and new, admitted in the hearing conducted under this section on behalf of the person show that the person is actually innocent. If the court finds that the person authorized in section 2137 has met the evidentiary burden of this paragraph, the court shall grant a new trial;
> >
> > **B.** *Only the perpetrator of the crime or crimes for which the person was convicted could be the source of the evidence*, and that the DNA test results, when considered with all the other evidence in the case, old and new, admitted in the hearing conducted under this section on behalf of the person would make it probable that a different verdict would result upon a new trial; or

---

[5] In this case, Reese is the individual referred to as "the person" within this section.

**C.** All of the prerequisites for obtaining a new trial based on newly discovered evidence are met as follows:

> **(1)** The DNA test results, when considered with all the other evidence in the case, old and new, admitted in the hearing conducted under this section on behalf of the person would make it probable that a different verdict would result upon a new trial;
>
> **(2)** The proffered DNA test results have been discovered by the person since the trial;
>
> **(3)** The proffered DNA test results could not have been obtained by the person prior to trial by the exercise of due diligence;
>
> **(4)** The DNA test results and other evidence admitted at the hearing conducted under this section on behalf of the person are material to the issue as to who is responsible for the crime for which the person was convicted; and
>
> **(5)** The DNA test results and other evidence admitted at the hearing conducted under this section on behalf of the person are not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict.

15 M.R.S. § 2138(10) (emphasis added).

[¶24]  Because the court in the matter before us determined that the perpetrator was *not* the only possible source of the DNA, we address two issues: (1) whether the court erred in determining that the DNA could have come from a source other than the perpetrator of the crime, *see id.* § 2138(10)(A), (B); and (2) if the court's finding that the DNA could have come from another source is

supported by competent evidence in the record, whether the court erred or abused its discretion in denying the motion for a new trial pursuant to 15 M.R.S. § 2138(10)(C).

B.    Possible Sources of the DNA for Purposes of 15 M.R.S. § 2138(10)(A) and (B)

[¶25]  Reese contends that there is only a remote possibility that the DNA on the tape came from someone other than the perpetrator of the crime because the print was embedded between layers of the duct tape; the other sources of contamination would have resulted in DNA being present on other portions of the tape, which were swabbed but returned negative results; and all of the other scenarios were purely speculative.  Reese also argues that the court improperly considered the trial evidence of his guilt in determining whether contamination— rather than contribution from the perpetrator—could have caused the male DNA to be present.

[¶26]  The court found that the duct tape could have been contaminated after the commission of the crime because the smooth side of the fifth layer of tape was *not* covered by an additional layer of tape.  The court acknowledged the latent print analyst's trial testimony that the print was found on the *adhesive* side of the fifth layer on a portion of the tape, which was not exposed until the analyst peeled the layers apart, but found that contamination from the smooth side of the fifth layer

was possible. Although the DNA contamination of the smooth side would have had to correspond to the location of the print on the adhesive side of the tape, the court's finding that this contamination was *possible* is not clearly erroneous. Such a small, trace amount of DNA would not necessarily be present throughout the tape, and there was some risk of such minor contamination in the field given that numerous investigators were present at the burial site when the body was discovered, photographed, and removed.

[¶27] The court's ultimate finding has its strongest support, however, in the alternative possibility of contamination in the laboratory. The sample taken from the tape is the only piece of evidence that was already known to have been contaminated with the latent print analyst's DNA, and additional contamination could have resulted from the print analyst's admitted reuse of a fingerprint brush that had been used to dust prints in other cases or from other contaminants in the lab at that time. This type of contamination would be consistent with the absence of DNA evidence on all other portions of the tape because the portion with the print was the only area that was thoroughly examined, dusted, clipped, and analyzed.[6]

---

[6] This case demonstrates the conundrum that may be faced by lab analysts, judges, attorneys, and juries when evidence that was collected and stored pursuant to now-outdated protocols is subjected to more advanced modes of DNA testing. Although the advances in DNA testing may provide more information about the DNA present in old samples, the new DNA evidence will not necessarily be

[¶28]   The prospect of an alternative suspect does not preclude the possibility that the male DNA resulted from lab contamination given that some contamination of this particular piece of evidence had already been discovered. Accordingly, the court did not err in reaching its ultimate finding that the evidence failed to establish, by clear and convincing evidence, that "*[o]nly* the perpetrator of the crime or crimes for which the person was convicted could be the source of the evidence."  15 M.R.S. § 2138(10)(A), (B) (emphasis added).

[¶29]   Nor did the court misapply the statute when analyzing paragraphs (A) and (B) by considering the trial evidence to determine whether the DNA could only have come from the perpetrator of the crime.  *See id.*  The lab workers' earlier testimony was highly relevant to the court's determinations about potential contamination, and the court did not act outside the confines of the statute in observing that the other circumstantial evidence of Reese's involvement in the crime buttresses the hypothesis that contamination, rather than an alternative perpetrator, could explain the contribution of a trace amount of male DNA to the sample.  *See id.* (requiring the court to consider the DNA test results "with all the other evidence in the case, old and new").  Even without considering the circumstantial trial evidence implicating Reese, however, the finding that the

---

illuminating on issues related to defendants' guilt or innocence if the samples were not handled and preserved using the more rigorous lab practices that are in place today.

perpetrator was not the only potential source of the DNA detected in the sample has ample evidentiary support because the sample was known to have been contaminated in the lab.

C.     Probability of a Different Result Upon a New Trial for Purposes of 15 M.R.S. § 2138(10)(C)

[¶30]  Having found that the trace amount of male DNA in the tested sample could have come from someone other than the perpetrator of the crime, the court properly proceeded to address the motion for a new trial under the standard set forth in section 2138(10)(C), which calls for a new trial if, among other requirements, the newly discovered evidence "would make it probable that a different verdict would result upon a new trial."  15 M.R.S. § 2138(10)(C)(1).

[¶31]  Reese argues that the court misapplied the statute by placing undue emphasis on the evidence presented in the original trial and failing to analyze how the newly discovered evidence would have changed that trial.  Particularly, Reese contends that (1) the new evidence would have enhanced the credibility of his alternative-suspect theory in combination with the existing evidence that a footprint near the body measured size seven-and-a-half to ten—much smaller than Reese's size-twelve shoes; (2) the State would not be able to argue, as it did in 2003, that the print on the tape could only have been left by the victim; and (3) if the State argued that random epithelial cells contaminated the evidence, the

reliability of all of the State's evidence would be viewed as questionable, and the discovery of the victim's DNA in the house would become less significant to the finder of fact.

[¶32]  Although Reese has pointed to several arguments that he would have made if he had known of the additional DNA evidence, the court did not misapply the statute, err in its findings, or abuse its discretion in determining that Reese had failed to demonstrate by clear and convincing evidence that the DNA results, "when considered with all the other evidence in the case, old and new, admitted in the hearing conducted under this section on behalf of the person would make it probable that a different verdict would result upon a new trial."  15 M.R.S. § 2138(10)(C)(1).  The record shows that the trial testimony about the size of the footprints was unscientific, that the victim remains a possible source of the print on the tape, and that the crime lab's contamination of the sample was known to the jury that convicted Reese.  Given the presence of the striped sheet from Reese's futon wrapped around the victim's body; the burial of the body behind Reese's mother's residence; the presence of the victim's blood on the futon and elsewhere in the residence; the presence of the victim's DNA on the blunt end of the hatchet in the residence; Reese's agitated behavior when his girlfriend returned from work on May 26, 2002, to find the house cleaned; and Reese's eagerness to leave the residence immediately upon her return, the court acted within the discretion

conferred by the statute in determining that a different verdict was not probable. *See id.* The court did not err in its findings of fact, misapply the statute, or abuse its discretion in denying the motion for a new trial.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Christopher K. MacLean, Esq., Elliott & MacLean, LLP, Camden, and Olland Reese pro se, for appellant Olland Reese

William J. Schneider, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Augusta, for appellee State of Maine

**At oral argument:**

Christopher K. MacLean, Esq., for appellant Olland Reese

Donald W. Macomber, Asst. Atty. Gen., for appellee State of Maine

Sagadahoc County Superior Court docket number CR-2002-73
FOR CLERK REFERENCE ONLY