**STATE of Indiana, Appellant–Plaintiff,**

v.

**Alfonso M. CHAVEZ, Appellee– Defendant.**

**No. 45A03–1012–CR–619.**

Court of Appeals of Indiana.

Aug. 30, 2011.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Jack Friedlander, Law Office of Jack Friedlander, Chicago, IL, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Alfonso M. Chavez has been charged with two counts of murder. Before trial, Chavez successfully moved to exclude statements of two codefendants that implicated Chavez in the murders. The trial court certified its order for interlocutory appeal, and we accepted jurisdiction. The State argues that neither the Sixth Amendment nor the Indiana Rules of Evidence require exclusion of the evidence. We conclude that the statements are inadmissible hearsay pursuant to the Rules of Evidence; therefore, we affirm the trial court's ruling on that ground and do not reach the constitutional issue.

### Facts and Procedural History

In May 2004, Jason Janek and Kevin Abulhusn were reported missing. On May 25, 2004, an officer saw someone driving a blue pickup truck that belonged to Janek. The officer attempted to stop the driver, but the driver eluded him. After the driver abandoned the truck, the officer found it and discovered Janek's and Abulhusn's bodies in the back. Each man had been shot in the head.

The case was characterized as unsolved until 2010, when Hugh Struss and David Redmon made statements implicating Eric Valdivia, Melecio Maravilla, Chavez, and Chavez's brother, Mark Chavez. According to the probable cause affidavit, Struss made the following statement:

In 2004, he [Struss] was 16 years old and had a close relationship with Eric Valdivia. Valdivia called him and told him that he had gotten into some trouble and wouldn't be back for a while.

Valdivia told him that Janek and Abulhusn had been killed in his bar last night. When he asked Valdivia what happened, Valdivia told him the following: Abulhusn and Janek had come to the Bar–Rio [a bar owned by Valdivia] to pay him (Valdivia) the money he (Abulhusn) owed. They (Valdivia, Alfonso Chavez, Maravilla, Abulhusn, and Janek) went into the basement of the bar to discuss payment. When they found out that Abulhusn did not have any money, Maravilla started screaming and slapping Abulhusn. Alfonso Chavez then pulled out a handgun and they tied up Abulhusn and Janek. When Abulhusn threatened to go [to] the police, Alfonso Chavez pulled the trigger and shot Abulhusn and Janek. After the shootings, he (Valdivia) ran up the stairs and left. Valdivia then asked him (Struss) to take care of his dogs and look after his dad. Prior to the above incident, he (Struss) was aware that Abulhusn owed Valdivia "a whole lot of money." A week before the above incident, he was at a cookout at Valdivia's home. When Abulhusn stopped by at the cookout, he recalls hearing Valdivia tell Abulhusn that he had one week to pay the debt.

Appellant's App. at 14.

Also according to the probable cause affidavit, Redmon made the following statement:

He [Redmon] was a co-worker and close friend of Mark Chavez. One night after work, he and Mark Chavez were driving to the gambling boats when Mark began to tell him that his brother Alfonso (Chavez) had been dealing cocaine for some time with Kevin Abulhusn. One night Kevin brought Jason Janek with him. Mark then stated that Alfonso shot at least one of the two and the other two took out the other. Mark told him that the murders occurred in the basement of Bar–Rio or in the basement of one of their houses. Mark did not give the names of the other two men who were with his brother Alfonso. Mark stated that the night of the murders, Alfonso and two other men came to his (Mark's) house in a pickup truck. Mark stated that he saw two dead bodies in the bed of the truck. He (Mark Chavez) then helped his brother and the two other guys roll the bodies with either carpet or plastic. His brother and the other two guys were all "coked up". After his brother left with the bodies, a police car attempted to stop the truck for speeding but his brother eluded the police pursuit and got away. Redmon remarked that Mark seemed to be boasting about the murders. A short time after the incident, Mark told him that he and his brother were getting away to California ... that they had family there.

*Id.*

On February 17, 2010, the State charged Chavez, Valdivia, and Maravilla with the murders of Janek and Abulhusn. The State also charged Chavez's brother Mark with two counts of assisting a criminal for his role in disposing of the bodies. Chavez was located in California and was extradited to Indiana.

Before trial, Chavez moved to exclude the statements that Mark made to Redmon and that Valdivia made to Struss on grounds that they were inadmissible hearsay and also violated his right to confrontation. Valdivia's whereabouts were unknown, and Mark was expected to assert his Fifth Amendment right not to testify. On November 5, 2010, the trial court held a hearing on Chavez's motion and granted it. On November 8, 2010, the State filed a motion to reconsider, which the trial court denied, but the court certified the order

for interlocutory appeal. We accepted jurisdiction on January 28, 2011.

## Discussion and Decision

 The State argues that the trial court erred by excluding Mark's and Valdivia's statements implicating Chavez because neither the constitution nor the rules of evidence require them to be excluded. The admission of evidence is within the sound discretion of the trial court, and we review the court's decision only for an abuse of discretion. *Boatner v. State*, 934 N.E.2d 184, 186 (Ind.Ct.App.2010). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* The trial court did not specify whether it was excluding the statements based on the hearsay rules or Chavez's right to confrontation; however, we may affirm on any basis supported by the record. *See Scott v. State*, 883 N.E.2d 147, 152 (Ind.Ct.App.2008) ("The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court."). We conclude that the statements are inadmissible hearsay; therefore, we decline to address the constitutional issue.

### I. Mark's Statements

 The State argues that Mark's statements are admissible because they are statements of a party-opponent. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is not admissible except as provided by law or the rules of evidence. Ind. Evidence Rule 802. Indiana Evidence Rule 801(d)(2) provides that a statement is not hearsay if:

The statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity; or (B) a statement of which the party has manifested an adoption or belief in its truth; or (C) a statement by a person authorized by the party to make a statement concerning the subject; or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

The State does not indicate which subsection it believes to be applicable here. On the record before us, none of them appears to be applicable. The statements that the State wished to admit against Chavez are not Chavez's own statements, and there is no indication that Mark was authorized to make statements on Chavez's behalf or that Chavez adopted Mark's statements. The State has not alleged that Mark was a co-conspirator with Chavez. Therefore, we conclude that the State has not shown that Mark's statements are statements of a party-opponent as defined by Evidence Rule 801(d)(2).[1]

Alternatively, the State argues that Mark's statements are admissible because they are statements against interest. Evidence Rule 804(b)(3) creates a hearsay exception for statements against interest if the declarant is unavailable as a witness. Mark is unavailable because the Fifth Amendment affords him the right not to testify. *See* Evidence Rule 804(a)(1) (a declarant is unavailable if the subject matter of his testimony is privileged). Evidence Rule 804(b)(3) defines "statement against interest" as follows:

not be statements by a party-opponent if offered against Chavez.

---

1. For the same reasons, even if Valdivia were located and tried, Valdivia's statements would

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both the declarant and the accused, is not within this exception.

First, we note that Mark's statements about what happened at the bar do not implicate Mark in any wrongdoing.[2] Mark's statement about disposing of the bodies is the only one that implicates him in a crime, and that is the basis for the charges of assisting a criminal. However, Evidence Rule 804(b)(3) explicitly states that the statement against interest exception does not apply in this scenario: "A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both the declarant and the accused, is not within this exception."

The State argues that this provision was designed to protect a defendant's right to confrontation and therefore should be re-interpreted in light of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the Supreme Court held that the Sixth Amendment applies to "testimonial" hearsay, and rejected the argument that hearsay should be admissible if it bears sufficient indicia of reliability. *Id.* at 68–69, 124 S.Ct. 1354. The State argues that Mark's statements are not testimonial, and thus should not be excluded because exclusion does not comport with the rule's constitutional underpinnings.

We disagree. First, we note that although many of our evidence rules mirror the Federal Rules of Evidence, Federal Evidence Rule 804(b)(3) does not include a provision excluding statements from codefendants.[3] Thus, our supreme court's addition of this provision to Indiana Evidence Rule 804(b)(3) appears to be a deliberate choice. The rule was amended in 2008, after *Crawford* was decided, but the provision excluding codefendants' statements remains intact. Although the Sixth Amendment and our hearsay rules address similar issues, they are not interchangeable. There may be evidence that would be admissible pursuant to our hearsay rules that must be excluded by the Sixth Amendment; likewise, there may be non-testimonial hearsay that is not admissible pursuant to our evidence rules. While

---

2. We also note that these statements are not based on his personal knowledge because Mark was not present at the bar; thus, there is an additional layer of hearsay. At the hearing on Chavez's motion, the trial court reviewed the transcript from a previous hearing and determined that Chavez was the source of Mark's information about what happened at the bar. Chavez's own statements, of course, would be statements of a party-opponent if offered against him.

3. The federal rule states:

 (3) Statement against interest.—A statement that:

 (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

 (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. Evidence Rule 804(b)(3).

*Crawford* rejected an analysis based on reliability, reliability remains a fundamental concern of our hearsay rules. *See, e.g., Jackson v. State,* 925 N.E.2d 369, 374–75 (Ind.2010) (bystander's statement to a paramedic did not fit the hearsay exception for statements made for the purpose of medical diagnosis because it was not the type of reliable evidence that the rule was intended to cover). We need not reach the issue of whether Mark's statements are testimonial, because they are clearly inadmissible hearsay pursuant to our evidence rules. Therefore, the State has not shown that the trial court abused its discretion by excluding Mark's statements.

### II. Valdivia's Statements

The State argues that Valdivia's statements are admissible because they were an excited utterance. Evidence Rule 803(2) creates an exception for excited utterances. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* The admission of an excited utterance turns on whether the statement was inherently reliable because the witness was under the stress of a startling event and therefore unlikely to make deliberate falsifications. *Boatner,* 934 N.E.2d at 186. "Although the amount of time that has passed is not dispositive, a statement that is made long after the startling event is usually less likely to be an excited utterance." *Id.*

The record before us gives no indication of how much time passed between the murders and Valdivia's statement to Redmon. The State claims that Valdivia was still under the stress of the event because he was "crying" and sounded "terrified." Appellee's Br. at 13. In support, the State cites page thirty-four of the transcript. On that page, the prosecutor characterizes Redmon's testimony at a bail hearing.

That testimony is not part of the record before us. We decline to find an abuse of discretion based solely on a prosecutor's characterization of testimony that is not available for our review. Because the State has not shown that the trial court abused its discretion by excluding Mark's and Valdivia's statements, we affirm.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.