2012 ME 9

**STATE of Maine**

v.

**Jesse GUYETTE.**

Supreme Judicial Court of Maine.

Argued: Nov. 8, 2011.

Decided: Jan. 24, 2012.

Matthew A. Hunter, Esq. (orally), Presque Isle, for appellant Jesse Guyette.

John M. Pluto, Asst. Dist. Atty., Prosecutorial District No. 8, Caribou, for appellee State of Maine.

Todd Collins, District Attorney (orally), Prosecutorial District No. 8, Caribou, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Jesse Guyette appeals from a judgment of the Superior Court (Aroostook County, *Cuddy, J.*) following a jury verdict finding him guilty of unlawful possession of scheduled drugs (Class C), 17–A M.R.S. § 1107–A(1)(B)(4) (2011).[1] Guyette argues that the court erred by admitting several statements at trial pursuant to the M.R. Evid. 804(b)(3) exception to the hearsay rule for statements against penal interest.[2] We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] We view the evidence admitted at trial in the light most favorable to the State and determine that the jury could have found the following facts beyond a reasonable doubt. *See State v. Preston*, 2011 ME 98, ¶ 2, 26 A.3d 850. On May 16, 2009, Ermin Skidgel met Scott Drost at a laundromat parking lot in Caribou. Skidgel had dated Drost's mother in the past and had contacted Drost to find a buyer for thirty Oxycodone pills that were in his possession. Drost had called Guyette regarding the pills and Guyette had · expressed an interest in buying them.

[¶ 3] Drost arrived at the parking lot with Guyette in a car driven by one of Guyette's friends. Drost entered the pas-

---

1. The relevant statutory section provides:

    § 1107–A. Unlawful possession of scheduled drugs
    1. Except as provided in subsection 2, a person is guilty of unlawful possession of a scheduled drug if the person intentionally or knowingly possesses what that person knows or believes to be a scheduled drug, which is in fact a scheduled drug, and the drug is:
    . . . .
    B. A schedule W drug that contains:
    . . . .
    (4) Oxycodone;
    17–A M.R.S. § 1107–A(1)(B)(4) (2011).

2. At the time of trial, M.R. Evid. 804(b)(3) provided, in relevant part:

    A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. A statement or confession offered against the accused in a criminal case, made by a defendant or other person implicating both the declarant and the accused, is not within this exception.

    The Rule has subsequently been amended, effective January 1, 2012, to apply the corroborating circumstances requirement to statements against penal interest used against the accused as well as those used to exculpate the accused. *See* M.R. Evid. 804(b)(3) advisory committee's note to 2012 amend., Me. Rpt. —— A.3d ——.

senger side of Skidgel's truck, counted the pills, and gave Skidgel three fifty-dollar bills, which Guyette had provided. Drost exited the truck, walked to the car Guyette was in, and passed the pills to Guyette through the car's window. Drost then walked away from the parking lot. Skidgel was unaware that Guyette was the source of the money used to buy the pills or that Guyette was the individual to whom Drost had passed the pills.

[¶ 4] Skidgel left the parking lot and went to a local gas station. He purchased gasoline with one of the fifty-dollar bills Drost had given him. A gas station employee discovered that the bill was counterfeit and reported this fact to local law enforcement. Later, a bank and a credit union, both in the Caribou area, each reported receiving counterfeit fifty-dollar bills. Officer John DeVeau of the Caribou Police Department was assigned to investigate the source of the counterfeit bills; his investigation ultimately led him to Skidgel, Drost, and Guyette.

[¶ 5] On May 20, 2009, DeVeau interviewed Guyette. After waiving his *Miranda* rights, Guyette admitted to having "purchased drugs four days ago" "from a kid named Scotty" and that the transaction had taken place at "a parking lot." He denied having any knowledge of the counterfeit fifty-dollar bills.

[¶ 6] Guyette was charged with aggravated forgery (Class B), 17–A M.R.S. § 702(1)(A) (2011), in relation to the counterfeit money, and unlawful possession of scheduled drugs (Class C), 17–A M.R.S. § 1107–A(1)(B)(4). At trial, Drost refused to testify and invoked his Fifth Amendment privilege against self-incrimination. Skidgel, however, testified about a telephone conversation he had with Drost upon learning that the fifty-dollar bills were counterfeit:

SKIDGEL: I called Scott and told him that this money that he had gave [sic]

me was counterfeit and we were in a whole bunch of trouble. That's what I said.

PROSECUTOR: Okay. And did you talk to him about where that money had come from?

SKIDGEL: Yes, I did. I asked him, I said, where did you get the money?

PROSECUTOR: And what did he tell you?

SKIDGEL: He told me Jesse.

PROSECUTOR: Okay. And did he say why Jesse gave him money?

SKIDGEL: No.

PROSECUTOR: Okay.

SKIDGEL: He just told me where he got it.

PROSECUTOR: Okay. Do you want to read the last three, four lines of your statement to yourself and, um, see if that changes your memory?

SKIDGEL: It says—okay, okay.

PROSECUTOR: What was the money for?

SKIDGEL: Pills.

[¶ 7] Guyette objected at sidebar that any statements Drost made to Skidgel were inadmissible hearsay and did not fall within the 804(b)(3) exception for statements against penal interest. The court disagreed. Having found that Drost was unavailable to testify, the court concluded that his statements fit within the 804(b)(3) hearsay exception because they were against his penal interest when he made them to Skidgel.

[¶ 8] Later, DeVeau was called to testify about an interview he had had with Drost on July 21, 2009, at the Caribou police station. An audio recording of the interview was played for the jury. During the interview, in response to questions from DeVeau, Drost provided a broad narrative of the transaction at the laundromat parking lot on May 16, 2009, involving Skidgel and Guyette. Drost stated that he

called Guyette, asked him if he was interested in buying the pills, and that Guyette replied, "Yes." He also stated that he had arrived at the laundromat parking lot with Guyette and that Guyette had given him money for the pills. Drost explained that he exchanged the money with Skidgel for "Oxy Fives," exited Skidgel's truck, passed the pills to Guyette through a car window, and then left the parking lot. Guyette again objected that the statements Drost made to DeVeau were not within the 804(b)(3) hearsay exception. The court, however, admitted the statements finding that they were against Drost's penal interest.

[¶ 9] At the close of the State's evidence at trial, Guyette moved for a judgment of acquittal on both charges. The court granted the motion as to the aggravated forgery charge, but denied the motion as to the charge of unlawful possession of scheduled drugs.[3] During deliberations, the jury requested to hear DeVeau's testimony concerning Guyette's admission a second time and to again hear the audio recording of Drost's interview with DeVeau. The court instructed the court reporter to reread the relevant portion of DeVeau's testimony and had the audio recording of Drost's interview played again. Seven minutes later the jury returned with a guilty verdict. The court sentenced Guyette to two years of imprisonment, all but five months suspended, two years of probation, and a $400 fine.

## II. DISCUSSION

### A. Statements Against Penal Interest

[¶ 10] Guyette argues that the court erred by admitting Drost's out-of-court statements to Skidgel and DeVeau because the statements do not fall within the M.R. Evid. 804(b)(3) hearsay exception.

[¶ 11] A trial court's decision to admit or exclude alleged hearsay evidence is reviewed for an abuse of discretion. *State v. Vaughan*, 2009 ME 63, ¶ 5, 974 A.2d 930. For a declarant's out-of-court statement to be admissible pursuant to M.R. Evid. 804(b)(3) the declarant must first be unavailable to testify as a witness at trial. *See State v. Reese*, 2005 ME 87, ¶ 11, 877 A.2d 1090. The court correctly found that Drost was unavailable as a witness because he invoked his Fifth Amendment privilege against self-incrimination, satisfying the initial requirement. *See* M.R. Evid. 804(a)(1) (defining unavailability as being exempted from testifying on the ground of privilege). Whether his statements to Skidgel and DeVeau meet M.R. Evid. 804(b)(3)'s further requirements, however, is central to this appeal.

[¶ 12] The last sentence of M.R. Evid. 804(b)(3) provides: "A statement or confession offered against the accused in a criminal case, made by a defendant *or other person implicating both the declarant and the accused, is not within this exception.*" (Emphasis added). The federal counterpart to M.R. Evid. 804(b)(3) lacks this provision, *see* Fed.R.Evid. 804(b)(3), and a majority of states have declined to adopt such an exclusion in their versions of the hearsay exception. However, six states have implemented similar language in their rules governing the admissibility of statements against penal interest.[4]

---

3. The State does not challenge this judgment on appeal.

4. *See* Nev.Rev.Stat. Ann. § 51.345 (2011); Okla. Stat. tit. 12 § 2804(B)(3) (2011); Ark.

R. Evid. 804(b)(3); Ind. R. Evid. 804(b)(3); N.D. R. Evid. 804(b)(3); Vt. R. Evid. 804(b)(3).

[¶ 13] The State suggests that because Drost was not a codefendant at trial, his statements to Skidgel and DeVeau were admissible even though they implicated Guyette. In *Bruton v. United States,* 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that during a joint trial, the admission of a nontestifying defendant's confession that implicated a codefendant violated the codefendant's right to confront witnesses against him pursuant to the Sixth Amendment of the United States Constitution. *See also Gauthier v. State,* 2011 ME 75, ¶ 4 n. 1, 23 A.3d 185. Our decisions and some commentators have acknowledged that the last sentence of M.R. Evid. 804(b)(3) is premised on similar concerns. *See State v. Boucher,* 1998 ME 209, ¶ 11 n. 4, 718 A.2d 1092 ("The *Bruton* requirements are also addressed in the last sentence of Rule 804(b)(3)"); *State v. Platt,* 1997 ME 229, ¶ 5, 704 A.2d 370 (explaining that the last sentence of M.R. Evid. 804(b)(3) "mirrors the requirements of *Bruton* ").[5] *See also* Field & Murray, *Maine Evidence* § 804.4 at 521 (6th ed.2007).

[¶ 14] Nevertheless, the holding in *Bruton* and the last sentence of M.R. Evid. 804(b)(3) are not coextensive. It is clear from a plain language reading of the Rule that the last sentence is far more expansive in its application to proffered statements against penal interest than the minimal requirements of *Bruton.* When offered against the accused in a criminal case, the last sentence excludes from the statement against penal interest hearsay exception out-of-court statements made by any person that implicate both the declarant and the accused.

[¶ 15] This interpretation is consistent with that of other jurisdictions that have applied similar language in their evidence rules to out-of-court statements characterized as being against the declarant's penal interest. In *State v. Chavez,* the Indiana Court of Appeals explained that pursuant to the last sentence of Ind. R. Evid. 804(b)(3), the statement against penal interest hearsay exception does not apply to "[a] statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both the declarant and the accused." 956 N.E.2d 709, 713 (Ind.Ct.App. 2011) (quoting Ind. R. Evid. 804(b)(3)). In that case, the court found that the trial court did not abuse its discretion when, pursuant to the last sentence of Ind. R. Evid. 804(b)(3), it excluded a statement from the defendant's brother that he had helped the defendant dispose of two dead bodies. *Id.* at 713–14. The court noted that although the hearsay rules and the Confrontation Clause address similar concerns, "they are not interchangeable." *Id.* at 713.

[¶ 16] Similarly, an Arkansas appellate court reversed a trial court's decision to admit a witness's statement pursuant to Ark. R. Evid. 804(b)(3) because the witness's statement was offered against the defendant and implicated both the witness

---

5. In *State v. Platt,* 1997 ME 229, ¶ 5, 704 A.2d 370, we explained that the confession of a nontestifying accomplice who had been tried separately was not excluded from the hearsay exception by the last sentence of 804(b)(3) because all references to Platt had been redacted; therefore, the confession did not implicate him. We noted, however, that Platt had not challenged the redacted confession on the grounds of relevance and found that the confession "provided a measure of circumstantial support" to bolster the credibility of a second accomplice's trial testimony, which was the only evidence implicating Platt in a robbery. *Id.* ¶ 4. Here, Guyette's name was not redacted from Drost's statements and even if it were, the redacted statements would not be relevant as there is no other testimony expressly linking Guyette to the transaction at the laundromat parking lot.

and the defendant. *See Burkett v. State,* 40 Ark.App. 150, 842 S.W.2d 857, 858–59 (1992). The court explained that the statement was "clearly governed by the last sentence of Rule 804(b)(3): 'A statement or confession offered against the accused in a criminal case, made by a co-defendant or other person implicating both himself and the accused, is not within this exception.'" *Id.* (quoting Ark. R. Evid. 804(b)(3)). The court concluded that because the statement was not within the hearsay exception the trial court committed reversible error by admitting it. *Id.*

[¶ 17] Accordingly, that Drost was not a codefendant at trial is of no consequence to the admissibility or inadmissibility of his statements pursuant to M.R. Evid. 804(b)(3). Drost's statements to Skidgel and DeVeau were offered against Guyette at trial and implicated Drost and Guyette in the illegal drug transaction. We therefore conclude that the statements are excluded from the M.R. Evid. 804(b)(3) hearsay exception pursuant to the plain language of the last sentence of the Rule. The court abused its discretion by admitting Drost's statements to Skidgel and DeVeau.

### B.  Harmless Error

[¶ 18] The State argues that even if the court erred by admitting Drost's statements to Skidgel and DeVeau, the error was harmless because the remaining evidence was sufficient to support the jury's verdict. We disagree.

[¶ 19] A preserved error that is not of constitutional dimension is harmless "if it is highly probable that the error did not affect the judgment." *See State v. Mangos,* 2008 ME 150, ¶ 15, 957 A.2d 89; M.R.Crim. P. 52(a). Drost's inadmissible hearsay statements were the only evidence that explained Guyette's admission and linked it to the transaction with Skidgel in the laundromat parking lot. Guyette's ad-

mission that he "purchased drugs" from someone named "Scotty" in a parking lot is vague and not specific to the offense charged: that he intentionally or knowingly possessed Oxycodone. Skidgel testified that he was unaware of Guyette's involvement when the drug transaction took place. Without Drost's statement that he took the Oxycodone pills from Skidgel and passed them to Guyette through a car window, no other evidence in the record directly established that Guyette possessed Oxycodone pills.

[¶ 20] Moreover, during deliberations the jury requested that the audio recording of Drost's statements to DeVeau be played a second time, along with DeVeau's testimony describing Guyette's admission. Seven minutes after listening to the second playing of the audio recording the jury found Guyette guilty. We cannot say that it is highly probable that the court's error in admitting Drost's inadmissible hearsay statements did not affect the jury's verdict.

### III.  CONCLUSION

[¶ 21] In summary, we conclude that Drost's statements to Skidgel and DeVeau did not fall within the M.R. Evid. 804(b)(3) exception to the hearsay rule, and the court's error in admitting those statements was not harmless. As a result, Guyette's conviction must be vacated.

The entry is:

Judgment vacated.